UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

VICKI LARUE                                                                                       PLAINTIFF

v.                                                            CIVIL ACTION NO. 3:03CV-573-S

METROPOLITAN LIFE INSURANCE COMPANY
d/b/a METLIFE, et al.                                                     DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court on motion of the defendants, Metropolitan Life Insurance Company, d/b/a MetLife, et al. (collectively, "MetLife"), for summary judgment in this action alleging wrongful termination of disability benefits to the plaintiff, Vicki LaRue.

The essential facts underlying this action are not in dispute.

In 1997 while LaRue was working as a registered nurse in the labor and delivery department of Humana Hospital - University of Louisville when she developed a Type-1 latex allergy. She was tested by Dr. C. Stephen Smith and positively diagnosed. In 1997, this allergy precluded her from working in any non-latex-safe environment which included the labor and delivery department in most, if not all, hospitals in Louisville. While University of Louisville Hospital temporarily reassigned her to other jobs, a permanent position in a latex-safe environment was not created for her. LaRue left the hospital in May of 1997.

LaRue had a disability insurance policy through MetLife. She sought and received total disability benefits due to her inability to work as a labor and delivery nurse. LaRue received benefits from June 1997 through April of 2002 under this policy. There is no dispute that she was entitled to receive benefits under the terms of the policy in 1997.

In early 2002, MetLife reviewed LaRue's file. The company hired Crawford & Company Healthcare Management to conduct a labor market survey in the Louisville area to determine

whether there were latex-free employment environments for registered nurses with latex allergies. Based upon the results of the survey and confirmation by LaRues's treating physician that she would not be restricted from working in a latex-free environment, MetLife terminated LaRue's benefits. MetLife stated in a letter to LaRue dated May 9, 2002 that

> ...we find that your medical condition would not interfere with your ability to perform the material and substantial duties of your regular occupation in the latex free safe work environment identified. As such, we find no basis for additional benefits to be payable. We will, of course, gladly review any information you wish to submit for our consideration.

Thus MetLife concluded that despite her allergy, work as a registered nurse in a latex-safe environment was available to her in the Louisville community.

LaRue objected to the scope of the survey inasmuch as the review was not limited to the availability of suitable positions within her occupation of Registered Nurse - Labor & Delivery Department, as specified in her MetLife policy.[1] Additional surveying was done confirming a number of positions for registered nurses in latex-safe labor and delivery departments at local hospitals. (LaRue 00361; LaRue 00351). Information was gathered verifying the existence of "actual RN job openings in Labor & Delivery," and confirming that "these employers can accommodate an RN with latex allergy." Rehabilitation Review, August 9, 2002, (LaRue 00361); Allied Consulting, Inc. Latex Allergies Hospital Labor and Delivery Units Survey Report - Addendum, November 22, 2002 (LaRue 00351). In addition to her objections, LaRue submitted a

---

[1] The record before the court is incomplete. A number of pieces of correspondence to which the plaintiff makes reference in the complaint and in her response brief have not been provided to the court. In particular, the court has not been shown LaRue's July 31, 2002 written objections to the May 9, 2002 letter, the August 1, 2002 letter from MetLife stating that it was reviewing the objections, nor the June 19, 2003 letter requesting a response from MetLife concerning its second review. The parties apparently agree that these documents exist and in sum and substance raise the issue we address herein.

letter from her treating physician, Dr. Smith, dated May 19, 2003,[2] for MetLife's consideration. LaRue focuses on particular statements in this document:

> Unfortunately, most hospitals and outpatients' surgical settings still have medical personnel using sterile <u>powdered</u> gloves. Work in these settings is impossible for Type I latex sensitive persons unless the latex glove dust is remediated to safe levels and new sources of the dust are eliminated.
>
> CONCLUSION:
>
> I can not allow Vickie to work in medical settings where she would have risk of airborne or contact latex allergies. Latex "safe" medical environments are acceptable areas in which Vickie may be employed but these settings are usually non-surgical/non-obstetric venues.

The information obtained from the hospitals in November of 2002 indicated that only two hospitals in the Louisville area still have some personnel who use powdered latex gloves. All of the hospitals indicated that non-powdered latex and non-latex gloves were used, most medical supplies were latex-free, all but one were willing to require all employees to wear latex-free gloves, and all indicated that they can provide a latex safe work environment. (LaRue 00356).

After receiving the supplemental information, MetLife did not reinstate LaRue's disability benefits. LaRue commenced this action for wrongful termination of benefits and violation of the Kentucky Unfair Claim Settlement Practices Act[3] on August 15, 2003 in the Jefferson County, Kentucky, Circuit Court. The defendants removed the action to this court under our diversity jurisdiction.

---

[2] The document in question (LaRue 00347) is entitled "Chart Review and Latex Allergy Synopsis." It is signed by Dr. Smith and dated May 19, 2003, but is not addressed. It appears as a report in three paragraphs: LaRue's past history, a paragraph entitled "Information Relevant to Present Problem," and a conclusion.

[3] LaRue alleged that MetLife engaged in unfair claims settlement practices due, in part, to its failure to provide her with a decision on her request for reconsideration of its May 9th termination of benefits. MetLife denied the allegation in its answer (DN 4, ¶ 13). There is no written response to LaRue's June 19, 2003 inquiry letter in the record before the court. This alleged failure alone cannot constitute an unfair claims settlement practice unless the May 9th termination benefits is found wrongful. *See, Whittmer v. Jones*, 864 S.W.2d 885, 889 (Ky. 1993)("there is no such thing as a 'technical violation' of the UCSPA).

In discovery in this matter, MetLife took the deposition of Dr. Smith and explored at length the subject of latex-safe work environments for registered nurses in the labor & delivery departments of local hospitals:

> Q: Okay. Since 1997 when [LaRue] developed this [latex] allergy, would you agree with me that a number of hospitals have come to recognize the difficulty or the problems with health care professionals and some patients having latex allergies?
>
> A: Yes, I would agree.
>
> Q: And have they created latex safe environments?
>
> A: Yes.
>
> Q: In the case of Ms. LaRue, she is able to perform the duties of a registered nurse, and even of a nurse operating in labor and delivery, as long as that function takes place in a latex safe environment?
>
> A: Yes...
>
> Q: In 1997 when you diagnosed Ms. LaRue with this Type I reaction, can you describe the general ability of those medical facilities in the Louisville area that offered labor and delivery services to accommodate somebody with that type of allergy?
>
> A: Some hospitals have started to provide latex safe areas. Some hospitals were working on programs to provide latex safe areas...And some hospitals were hoping it would go away by not doing anything, except when a person developed latex sensitivity, an employee, they were moved to an area away from latex rather than removing the latex from the area. So you really had three categories, those that were making the change, those that were planning to make the change, and those that had no plans to make changes.
>
> Q: Am I correct based upon your previous testimony that that is no longer the case today, that is to say that those categories of institutions no longer exist in that form?
>
> A: In the Louisville area, to my knowledge, all hospitals are providing latex safe areas and are attentive to patients by doing questioning...
>
> Q: [H]ave you treated other health care professionals with latex allergies?
>
> A: Yes, sir.
>
> Q: In conjunction with those patients, have you had occasion to contact personnel at local hospitals regarding those hospitals' willingness to accommodate those employees by creating latex safe environments?

> A: Yes, I have.
>
> Q: Have those individuals on any occasion voiced recalcitrance or resistance to creating latex safe environments?
>
> A: The case that I worked on most recently was one with a local hospital that had not instituted latex safe procedures in their surgical and obstetrical suites in labor and delivery – or labor areas and they were not resistant once they learned the ramifications of the problem. Primarily, there were other hospitals out there that were going to take their good employees if they didn't do something to help...
>
> Q: Is it fair for me to take from your testimony today that the attitudes of all of these facilities, collectively, have changed substantially with respect to this question in the last seven years?
>
> A: Absolutely...
>
> Q: As we sit here today, are you able to testify when hospitals in this community, Louisville, came on board with this?
>
> A: I can't tell you which hospitals came on board when, but a polling of those hospitals will tell you when their risk management team instituted their latex avoidance policies.

Smith depo., pgs. 20, 28-29, 32-34.

MetLife has moved for summary judgment on the ground that LaRue's latex allergy has been shown to no longer be totally disabling under the terms of the policy. "Total Disability" is defined by the policy to mean that "because of Injury or Sickness : (a) You are unable to perform the substantial and material duties of Your Occupation; and (b) You are under a Physician's Care." MetLife policy Extended Own Occupation Benefit Rider (replacing definition of "Total Disability" contained in MetLife policy #15 6100424).

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty*

*Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

The court concludes that no genuine issue of material fact exists and the defendants are entitled to summary judgment as a matter of law. The initial labor market survey was supplemented with additional more specific inquiries concerning the availability of RN - labor & delivery jobs in latex-safe environments and confirming that such jobs exist in the Louisville community. The May 19, 2003 letter of Dr. Smith opined that (1) the use of powdered latex gloves would be problematic for a Type-1 latex allergic individual if airborne dust in the work environment was not controlled, and (2) that latex-safe medical environments were usually non-surgical/non-obstetrical venues. However, the market survey revealed that only two hospitals in the Louisville area used any powdered latex gloves. All of the hospitals noted that they were willing to require all employees to wear non-latex gloves. All stated that they could provide a latex-safe work environment. When the hospitals were questioned specifically concerning RN positions in labor and delivery, a number of them stated that they could accommodate an RN with latex allergy. Based upon the information before it, MetLife credited the survey done which involved actually contacting the hospitals in the community about their facilities as opposed to accepting the single, generalized statement of Dr. Smith that "latex-safe environments [were] usually non-surgical/non-obstetrical venues." Dr. Smith's qualification of his statement about latex-safe environments with the term "usually" allowed for the findings of the survey that there were some latex-safe labor and delivery departments

in which a latex allergic RN could be employed. On the evidence which was before MetLife, LaRue has not shown a genuine issue of material fact on its claim that MetLife breached the insurance contract. MetLife found that LaRue was no longer totally disabled under the terms of the policy due to a change in the work environment in which LaRue could engage in her own occupation. LaRue has not come forward with evidence evidencing a genuine issue of fact concerning this conclusion.

Further, the deposition testimony of Dr. Smith taken in this case essentially rendered his own May 19, 2003 comment a nullity inasmuch as he acknowledged the significant changes in the hospital environment over the past seven years and the existence of latex-safe labor and delivery venues in local hospitals. Dr. Smith's testimony and the November 2002 supplemental survey also controvert the unsupported speculative comment of LaRue's expert, Don Kelley, in his affidavit that "...it does not seem reasonable to conclude that a facility's ability to accommodate a patient also means that the same facility can accommodate an employee with a similar disability or health problem." LaRue has not come forward with any evidence to create a genuine issue of material fact on this point. MetLife's evidence that a number of latex-safe labor and delivery venues exist in Louisville and the hospitals' reported willingness to accommodate latex allergic registered nurse employees stands uncontroverted. LaRue's breach of contract and unfair claims settlement practices claims therefore fail.

For the reasons set forth herein, summary judgment will be granted in favor of the defendants. A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED**.